UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PATRICIA BALL                                          CIVIL ACTION

VERSUS                                                 NO. 18-4750

NANCY A. BERRYHILL, ACTING                             SECTION "H" (2)
COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION

## REPORT AND RECOMMENDATION

Plaintiff Patricia Ball seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), terminating plaintiff's supplemental security income benefits ("SSI") due to medical improvement under Title XVI of the Act. 42 U.S.C. § 1382c(a)(4). The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2E(B).

I.    PROCEDURAL HISTORY

In an administrative decision dated December 4, 2003, the Commissioner found plaintiff disabled as of March 1, 2003, due to depression, which the Commissioner found met Listing 12.04. (Tr. 10, 49). On December 11, 2014, the Commissioner performed a continuing disability review and found that plaintiff had experienced medical improvement related to her ability to work, and was no longer disabled as of December 1, 2014. (Tr. 9, 58–59). This determination was upheld upon reconsideration after a disability hearing held

on February 5, 2016, before a Disability Hearing Officer in Harvey, Louisiana. (Tr. 9; 61–83). Plaintiff waived her right to appear at the February 2016 hearing (Tr. 65–66).

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held in New Orleans, Louisiana, on February 27, 2017. (Tr. 25–48). Although informed of her right to representation, plaintiff chose to appear and testify without the assistance of an attorney or other representative. (Tr. 110–11; 118). The ALJ issued a decision on May 18, 2017, confirming the Commissioner's earlier determination that Ball's medical improvement caused her disability to end on December 1, 2014, and that she had not become disabled again since that date for purposes of the Act. (Tr. 9–18). On May 23, 2017, Ball requested review of the ALJ's decision. (Tr. 119–20). After review, the Appeals Council upheld the ALJ's decision on April 12, 2018, and the ALJ's decision became the Commissioner's final decision for purposes of this court's review. (Tr. 1–3).

Plaintiff filed her complaint in this court on May 9, 2018. Record Doc. No. 1. She filed a timely memorandum of facts and law on August 31, 2018. Record Doc. No. 11. The Commissioner filed her reply memorandum on November 1, 2018. Record Doc. No. 14.

II.    STATEMENT OF THE ISSUE ON APPEAL

Plaintiff contends that the Commissioner made the following errors:

A.    The ALJ erred at step 1 of the sequential evaluation for cessation of disability benefits in finding that Ball does not meet Listing 12.05 for intellectual disorders and had insufficient evidence to support this finding.

B.    The ALJ improperly found that plaintiff experienced medical improvement because the record was incomplete as it did not include the Comparison Point Decision[1] or plaintiff's medical records dating back to the time of that decision.

Record Doc. No. 11 at p. 6.

## III.   ALJ'S FINDINGS RELEVANT TO ISSUE ON APPEAL

The ALJ made the following findings relevant to the issue on appeal:

1.    The most recent favorable medical decision finding that plaintiff was disabled was a determination dated December 4, 2003. This is known as the "comparison point decision" ("CPD").

2.    At the time of the CPD, plaintiff had the following medically determinable impairment: depression. This impairment was found to meet section 12.04 of 20 C.F.R. Part 404, Subpart P, Appendix 1.

3.    As of December 1, 2014, plaintiff had the following medically determinable impairments: right hip bursitis, lumbar degenerative disc disease with disc bulging, obesity, bilateral knee osteoarthritis, depressive disorder, borderline intellectual functioning, heart murmur and hypertension. These are plaintiff's current impairments.

4.    Since December 1, 2014, Ball has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5.    Medical improvement occurred as of December 1, 2014.

6.    The medical improvement is related to plaintiff's ability to work because, as of December 1, 2014, plaintiff's CPD impairment no longer met or medically equaled the same listing that was met at the time of the CPD.

---

[1] For purposes of determining whether medical improvement has occurred such that a claimant's disability has ended, the Commissioner compares the current medical severity of that impairment(s) which was present at the time of the most recent favorable medical decision that the claimant was disabled or continued to be disabled to the medical severity of that impairment(s) at that time. The most recent favorable medical decision is the latest decision involving a consideration of the medical evidence and the issue of whether the claimant was disabled or continued to be disabled which became final. 20 C.F.R. § 404.1594.

7.    Beginning on December 1, 2014, plaintiff has continued to have a severe impairment or combination of impairments. The above-listed medically determinable impairments, excepting heart murmur and hypertension, are severe.

8.    Beginning on December 1, 2014, based on her current impairments, plaintiff has had the residual functional capacity to perform light work, with certain postural limitations. Mentally, plaintiff is limited to performing tasks commensurate with a Specific Vocational Preparation ("SVP") Rating of two or less, with no more than occasional interaction with the public.

9.    Plaintiff has no past relevant work.

10.    On December 1, 2014, plaintiff was a younger individual age 18–49.

11.    Plaintiff has a limited education and is able to communicate in English.

12.    Transferability of job skills is not an issue because Ball does not have past relevant work.

13.    Beginning on December 1, 2014, considering plaintiff's age, education, work experience, and residual functional capacity based on the current impairments, jobs exist in significant numbers in the national economy that she can perform, including surveillance system monitor, general clerk and information clerk.

14.    Plaintiff's disability ended on December 1, 2014, and plaintiff had not become disabled again through May 18, 2017, the date of the ALJ's decision.

(Tr. 9–18).

IV.    <u>ANALYSIS</u>

A.    <u>Standards of Review</u>

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in

4

evaluating the evidence. Richard ex rel. Z.N.F. v. Astrue, 480 F. App'x 773, 776 (5th Cir. 2012) (citing Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005)); Stringer v. Astrue, 465 F. App'x 361, 363 (5th Cir. 2012) (citing Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002)). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Richard ex rel. Z.N.F., 480 F. App'x at 776; Stringer, 465 F. App'x at 363–64; Perez, 415 F.3d at 461. This court may not reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision. Halterman ex rel. Halterman v. Colvin, 544 F. App'x 358, 360 (5th Cir. 2013) (citing Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000)); Stringer, 465 F. App'x at 364. The Commissioner, rather than the courts, must resolve conflicts in the evidence. McCaskill v. Dep't of Health & Human Servs., 640 F. App'x 331, 332–33 (5th Cir. 2016) (citing Perez, 415 F.3d at 461); Luckey v. Astrue, 458 F. App'x 322, 324 (5th Cir. 2011) (citing Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990)); Newton, 209 F.3d at 452.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it. Joubert v. Astrue, 287 F. App'x 380, 382 (5th Cir. 2008) (citing Perez,

415 F.3d at 461). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Ray v. Barnhart, 163 F. App'x 308, 311 (5th Cir. 2006) (citing Perales, 402 U.S. at 390); Perez, 415 F.3d at 461.

If a recipient is entitled to SSI, his or her continued entitlement to those benefits must be reviewed periodically. 20 C.F.R. § 416.994(a). For disabled adults, the Commissioner must determine if there has been "medical improvement" in the recipient's impairments and, if so, whether this medical improvement is related to the recipient's ability to work. 20 C.F.R. § 416.994(b). "Medical improvement" is any decrease in the medical severity of a recipient's impairments which was present at the time of the most recent favorable medical decision that the claimant was disabled or continued to be disabled. 20 C.F.R. § 416.994(b)(1)(i). A determination that there has been a decrease in medical severity must be based on improvement in the symptoms, signs, or laboratory findings associated with the recipient's impairments. Id. The "most recent favorable medical decision" is the latest decision involving a consideration of the medical evidence and the issue of whether a claimant/recipient was disabled or continued to be disabled which became final. 20 C.F.R. § 416.994(b)(1)(vii). This decision is also known as the "comparison point decision" or "CPD."

In determining whether medical improvement has occurred, an ALJ is tasked with comparing the current medical severity of the recipient's impairments which was present at the time of the CPD to the medical severity of those same impairments at the time the

CPD was rendered. 20 C.F.R. § 416.994(b)(1)(vii). If medical improvement has occurred, the ALJ must compare the recipient's current functional capacity to do basic work activities (i.e., his or her residual functional capacity) based on the previously existing impairments with the recipient's prior residual functional capacity in order to determine whether the medical improvement is related to the recipient's ability to do work. Id.

If the recipient's impairments have not medically improved, the Commissioner must consider whether one or more of the exceptions to medical improvement applies. 20 C.F.R. § 416.994(b). If medical improvement related to the recipient's ability to work has not occurred and no exception applies, the recipient's benefits will continue. Id. Even when medical improvement related to the recipient's ability to work has occurred or an exception applies, the Commissioner must typically show that the claimant is currently able to engage in "substantial gainful activity" before finding that a claimant is no longer disabled. Id. "Substantial gainful activity" is work activity that involves doing significant physical or mental activities for pay or profit. 20 C.F.R. § 416.972.

The Commissioner has promulgated regulations that provide procedures for evaluating continued disability. 20 C.F.R. § 416.994. The regulations include a eight-step evaluation

process for determining whether a disability benefit recipient continues to be disabled.[2]

Id.

---

[2] The eight-step analysis requires consideration of the following:

First, it must be determined whether the recipient has an impairment or combination of impairments that meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the recipient does, her disability continues. Id. § 416.994(b)(5)(i).

Second, it must be determined whether medical improvement has occurred. Id. § 416.994(b)(5)(ii). Medical improvement is any decrease in medical severity of the recipient's impairment(s) present at the time of the most recent favorable medical decision that the recipient was disabled, i.e., the CPD. Id. § 404.1594(b). Medical improvement must be based on improvement in symptoms, signs and/or laboratory findings. Id. § 416.994(b)(1)(i). If medical improvement has occurred, the analysis proceeds to the third step. If not, the analysis proceeds to the fourth step.

Third, it must be determined whether medical improvement is related to the ability to work. Id. § 416.994(b)(5)(iii). Medical improvement is related to the ability to work if it results in an increase in the recipient's capacity to perform basic work activities. Id. § 416.994(b)(1)(iii). If it does, the analysis proceeds to the fifth step.

Fourth, it must be determined if an exception to medical improvement applies. Id. § 416.994(b)(5)(iv). There are two groups of exceptions. Id. §§ 416.994(b)(3) and (b)(4). If one of the first group of exceptions applies, the analysis proceeds to step five. If one of the second group of exceptions applies, the recipient's disability ends. If none of the exceptions apply, the recipient's disability continues.

Fifth, it must be determined whether all the recipient's current impairments in combination are severe. Id. § 416.994(b)(5)(v). If all current impairments in combination do not significantly limit the recipient's ability to do basic work activities, the claimant is no longer disabled. If they do, the analysis proceeds to step six.

Sixth, the recipient's residual functional capacity must be assessed based on the current impairments and it must be determined if the claimant can perform past relevant work. Id. § 416.994(b)(5)(vi). If the recipient has the capacity to perform past relevant work, her disability has ended. If not, the analysis proceeds to the seventh and final step.

Seventh, it must be determined whether other work exists that the recipient can perform, given her residual functional capacity and considering her age, education and past work experience. Id. § 416.994(b)(5)(vii). If the recipient can perform other work, she is no longer disabled. If the recipient cannot perform other work, her disability continues.

Step eight applies if the evidence in the recipient's file regarding past relevant work is insufficient to make a finding under step seven about whether the recipient can perform her past relevant work. If it is determined that the recipient can adjust to other work based solely on her age, education, and residual functional capacity, the recipient is no longer disabled. Id. § 416.994(b)(5)(viii).

Because the medical improvement determination requires an examination of the CPD, agency regulations provide the procedure an ALJ must follow in the event a benefit recipient's CPD file cannot be located:

> If the prior file cannot be located, we will first determine whether [the recipient is] able to now engage in substantial gainful activity based on all [his or her] current impairments . . . . If [the recipient is] able to engage in substantial gainful activity, we will determine whether an attempt should be made to reconstruct those portions of the missing file that were relevant to our most recent favorable medical decision (e.g., work history, medical evidence from treating sources and the results of consultative examinations). This determination will consider the potential availability of old records in light of their age, whether the source of the evidence is still in operation, and whether reconstruction efforts will yield a complete record of the basis for the most recent favorable medical decision. <u>If relevant parts of the prior record are not reconstructed either because it is determined not to attempt reconstruction or because such efforts fail, medical improvement cannot be found.</u> The documentation of [the recipient's] current impairments will provide a basis for any future reviews. If the missing file is later found, it may serve as a basis for reopening any decision under this section . . . .

20 C.F.R. § 416.994(b)(2)(iv)(E) (emphasis added). Agency regulations <u>preclude</u> a finding of medical improvement when the CPD cannot be located and is not reconstructed. <u>Hallaron v. Colvin</u>, 578 F. App'x 350, 353 (5th Cir. 2014).

B.    <u>Factual Background</u>

Ball testified at the ALJ hearing that she was 38 years old, right-handed, five feet, three inches tall and weighed approximately 260 pounds. (Tr. 32). She stated that she was single, had no children and lived with her mother. <u>Id</u>. She said that she had no source of income or employment benefits. <u>Id</u>. She testified that she relies on Medicaid for health insurance. <u>Id</u>. Ball stated that she does not receive food stamps. <u>Id</u>. She said that she did not

have a driver's license, nor had she ever tried to obtain one in the past. Id. Ball testified that the reason she had never attempted to get a driver's license was because she was unable to drive. Id. She stated that she had a problem with her knee and could hardly walk. (Tr. 32–33). Ball explained that when she needs to travel somewhere, her mother drives her from place to place. (Tr. 33). She said that she has never taken public transportation. Id.

Ball testified that she had an eleventh-grade education and had never earned a General Education Diploma ("GED"). Id. Plaintiff said that she had difficulty reading and writing. Id. She stated that she could read a simply grocery list with words such as "bread, eggs, milk, cheese." Id. She stated that she has never attempted to work. Id.

Ball testified that she did not agree with the lower-level agency decision that her medical condition had improved as of 2014. Id. Plaintiff stated that she still struggles with depression. (Tr. 34). She stated that she does not see a psychologist or psychiatrist for her depression because these mental health processionals do not accept Medicaid. Id. She testified that she had seen mental health professionals in the past, but she did not remember when she had spoken to them. Id. She estimated that she had last seen a mental health professional over two years before the hearing. Id. Plaintiff could not identify the names of the mental health professionals she had previously seen. Id. Ball stated that she was not certain, but she believed she had seen a mental health professional in a clinic. Id. She could not remember the location of that clinic. Id.

Ball testified that because of her depression she "can't be around a lot of people," and that she always keeps to herself. Id. She stated that when she is out of the house and around large groups of people, she immediately wants to go home. Id. Plaintiff said that she usually wants to be inside and away from people. (Tr. 34–35). She testified that she has not been in a physical fight in the three years preceding the hearing. (Tr. 35). She stated that in the last three years she has verbally "lash[ed] out" at her sister. Id. She stated that she does not want her sister around her. Id. Plaintiff testified that she cries every day. Id. She said that there is nothing in particular that makes her cry, but that the crying occurs "randomly." Id. Ball stated that she sometimes has thoughts of wanting to hurt herself. (Tr. 36). She testified that the last time she had thoughts of hurting herself was the day before the hearing. Id. Plaintiff said that she had never actually tried to hurt herself. Id.

Ball said that she did not have any friends. Id. She stated that she gets along with her mother. Id. Plaintiff said that she and her mother like to watch television together, specifically, game shows. Id. She stated that she sometimes understands what she is watching on these game shows. (Tr. 37). Ball said she is not able to follow along for an entire 30-minute game show because she gets up and tries to walk around during the show. Id. She reiterated that she can hardly walk. Id. She testified that she cannot be in an enclosed area for a long period of time. Id. Plaintiff said that she thinks she needs mental health treatment. Id. She stated that her mother attempted to get her mental health treatment, but the mental health providers would not accept plaintiff's Medicaid. Id.

Plaintiff stated that she does not use marijuana, but she is sometimes around people that use it. (Tr. 38). She stated that when marijuana users come near her she tries to "get away from it." Id.

Ball testified that she had a knee problem and was prescribed a walker by her doctor at Gretna Medical Center, where she received treatment for her knee. Id. She said that her doctors told her she needed knee replacement surgery. Id. Plaintiff testified that she had not scheduled a knee replacement surgery because her doctors told her that she needed Medicare in order to have the procedure. (Tr. 39). She testified that she takes ibuprofen for her knee pain. Id. Plaintiff said that she takes ibuprofen twice a day and that it sometimes helps ease her knee pain. Id. Ball stated that her doctor prescribed her the medication and that her mother has custody of her medicine. Id. She testified that the medication helps soothe her pain for about 30 minutes. Id. She stated that after 30 minutes, she feels constant pain while moving around, sitting and lying down. Id. Plaintiff stated that sitting down exacerbates the pain. (Tr. 40). She said that the pain usually starts after she sits for about five minutes. Id. She stated that standing up for five minutes also exacerbates the pain, and she is forced to sit down after standing for that long. Id.

Plaintiff testified that she cannot walk long distances without taking multiple breaks because of the pain in her leg and knee. Id. She said that she can hardly lift anything. Id. Plaintiff testified that she cannot lift a gallon of milk. Id. She stated that the walker she uses

has wheels. Id. She stated that other than taking her prescribed medication, she does nothing else to manage her pain. (Tr. 41).

Ball said that her doctors performed an MRI and an x-ray on her knee at Gretna Medical Center. Id. She stated that the last time she went to Gretna Medical Center was the week before the hearing. Id. Plaintiff testified that her doctors told her that they could not see her because her Medicaid card was no longer valid. Id. Ball said that the last time she was examined by a doctor was approximately January 2017, when her doctors prescribed her a walker. (Tr. 41–42). She stated that before she received a walker, her mother would help her get up and move around. (Tr. 42).

Ball testified that she spends a typical day inside her house. Id. She said that the only activity she does during the day is watching television. Id. Plaintiff said that her mother cooks for her. Id. Plaintiff said that she never prepares food for herself. Id. She testified that the last time she prepared her own food was before she started experiencing pain in her knee, approximately two to three years prior to the hearing. Id. Ball said that when she first started having knee pain, she would fall down every time she would get up. Id. Plaintiff stated that she was unsure if she had injured her knee, and that the pain spontaneously and immediately began two or three years before the hearing. (Tr. 43). She testified that her mother told her she had fallen down once, blacked out and that her mother had needed to help her stand. Id. Plaintiff said she had no recollection of this fall. Id.

Plaintiff said that she visited the Meadowcrest emergency room in October 2014. Id. Ball said that since that visit, she had not received medical treatment anywhere else. Id.

C.    Vocational Expert Testimony

A vocational expert, Patricia Ehlinger, testified at the hearing. (Tr. 44). The ALJ posed a hypothetical of an individual of plaintiff's age, education and lack of significant work history who can lift and/or carry 20 pounds occasionally and 10 pounds frequently; could stand and/or walk for two hours per eight-hour work day; who could not tolerate pushing with the bilateral lower extremities or climbing of ladders, ropes or scaffolds; and would be limited to occasional stooping, balancing and climbing of ramps or stairs with no kneeling, crouching or crawling. (Tr. 45). This hypothetical individual was limited to performing tasks with an SVP level of two or less with no more than occasional interaction with the public. (Tr. 45–46). Ehlinger stated that such an individual could perform the following "sedentary category" jobs in the national economy: surveillance system monitor, general clerk and information clerk. (Tr. 46).

The ALJ then posed a second hypothetical identical to the first, except with the added limitation that the individual would be expected to be "off task" for at least 20 percent of a typical work day and/or would be absent from work at least three days per month. Id. Ehlinger testified that no jobs in the national economy existed for such an individual. (Tr. 47).

D.    Medical Evidence

I have reviewed the medical records in evidence and the ALJ's summary of the evidence. (Tr. 9–18). I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

E.    Plaintiff's Appeal

1. The issue of whether substantial evidence supports the ALJ's determination that plaintiff did not meet Listing 12.05 was improperly and prematurely decided by the ALJ because the ALJ failed to utilize proper agency procedure for the scenario of a missing CPD file.

2. Because the ALJ failed to locate or reconstruct plaintiff's December 2003 CPD file, the ALJ improperly found that plaintiff experienced medical improvement under agency regulations.

The Commissioner may terminate disability benefits if substantial evidence demonstrates that (1) there has been any medical improvement in the individual's impairment(s); and (2) the individual is now able to engage in substantial gainful activity. 42 U.S.C. § 423(f)(1); Griego v. Sullivan, 940 F.2d 942, 943–44 (5th Cir. 1991).

In her decision, the ALJ applied the sequential evaluation for cessation of disability benefits and affirmed plaintiff's continuing disability review decision, finding that plaintiff's disability had ceased and that medical improvement occurred on December 1, 2014. (Tr. 13). In her decision, the ALJ noted the existence of plaintiff's December 4, 2003 CPD and referenced the CPD's finding that plaintiff had the medically determinable impairment of depression. (Tr. 10).

15

In her memorandum, plaintiff asserts that the CPD was absent from the plaintiff's case record at the time of the ALJ's decision. Record Doc. No. 11 at p. 13. Significantly, the Commissioner confirms plaintiff's assertion in her reply, stating the following: "The Commissioner has been unable to locate the December 2003 comparison point decision (CPD) in which the Commissioner found Plaintiff disabled." Record Doc. No. 14 at p. 8. The only information in the record regarding plaintiff's CPD is a "CDR Worksheet" filled out by an unknown examiner with some brief notes about the CPD findings. (Tr. 240). Another document in the record suggests the possibility that plaintiff's CPD file was last seen on December 9, 2014, when plaintiff's "paper case" was placed on top of a file cabinet at an unknown location by examiner Charlotte Ducote, Ph.D. (Tr. 234).

Plaintiff avers that the ALJ's medical improvement finding was improper because the ALJ failed to cite to the CPD or any of the medical evidence considered in the rendering of the CPD. Record Doc. 11 at p. 8. Plaintiff argues that in the absence of a CPD in the record, the ALJ cannot make a finding of medical improvement. Id. at p. 13. Defendant argues that there is no requirement that a CPD be in the record in order for an ALJ to make a finding of medical improvement. Record Doc. No. 14 at p. 8.

Neither party states the rule precisely, but plaintiff is correct that the ALJ's medical improvement finding was improper. The procedure an ALJ must follow in the scenario of a missing CPD file – a procedure that neither party cites in her briefing – is clear and concise and even falls under the convenient heading "Prior file cannot be located." 20

C.F.R. § 416.994(b)(2)(iv)(E). Although the CPD itself is not required to be in the record for an ALJ to make a finding of medical improvement, the relevant portions of a missing CPD file – such as work history, medical evidence, and consultative examination results – <u>must be reconstructed</u> in order for medical improvement to be found. 20 C.F.R. § 416.994(b)(2)(iv)(E). Agency regulations preclude a finding of medical improvement when the CPD file cannot be found and is not reconstructed by the ALJ. <u>Hallaron</u>, 578 F. App'x at 353.

The Commissioner has admitted that the 2003 CPD cannot be found. Record Doc. No. 14 at p. 8. In her decision, the ALJ did not make a determination of "whether an attempt should be made to reconstruct those portions of the missing file that were relevant to [the] most recent favorable medical decision." 20 C.F.R. § 416.994(b)(2)(iv)(E). The ALJ did not "consider the potential availability ot old records in light of their age, whether the source of the evidence is still in operation, and whether reconstruction efforts will yield a complete record of the basis for the most recent favorable medical decision." <u>Id</u>. In determining whether medical improvement occurred, the ALJ neglected to compare the current medical severity of the plaintiff's impairments present at the time of the CPD to the medical severity of those same impairments at the time the CPD was rendered. 20 C.F.R. § 416.994(b)(1)(vii). The ALJ's decision neglected to even mention that the CPD file was missing and instead issued a conclusory finding – without any citations, comparisons or references to the CPD or its supporting records – that Ball no longer met or medically

equaled the listing that she had met at the time of the CPD. (Tr. 10). The ALJ bypassed agency regulations pertaining to missing CPD files and proceeded to analyze Ball's entitlement to SSI based on whether there was evidence of current disability. Therefore, the ALJ's finding of medical improvement was based on application of an improper legal standard.

"If the record before the agency does not support the agency action [or] if the agency has not considered all relevant factors, . . . the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985); see also I.N.S. v. Orlando Ventura, 537 U.S. 12, 16 (2002) (per curiam) ("Generally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands."). In the event an ALJ fails to properly follow the proper legal standard for the scenario of a missing CPD file, the Fifth Circuit had held that "remand to the Commissioner is appropriate." Hallaron, 578 F. App'x at 354. Plaintiff's "entitlement to benefits depends on further factual development and the application of a standard that the Commissioner is best placed to apply." Id. On remand, the ALJ must make a determination of whether an attempt should be made to reconstruct or locate the December 2003 CPD file, following the procedure set forth in 20 C.F.R. § 416.994(b)(2)(iv)(E). "If the file can be reconstructed, the ALJ will be able to make the comparison the regulations mandate; if not, [Ball's] benefits will be

continued, and the new ALJ decision will serve as the comparison-point decision for future [continuing disability reviews]." Id.

CONCLUSION

By failing to locate or reconstruct plaintiff's December 2003 CPD file, the ALJ used improper legal standards in reaching her conclusion that plaintiff experienced medical improvement.

**RECOMMENDATION**

For the foregoing reasons, **IT IS RECOMMENDED** that plaintiff's appeal be be GRANTED and her complaint **REMANDED** to the Social Security Administration with instructions to vacate the Commissioner's decision and conduct further proceedings consistent with this Report and Recommendation.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[3]

---

[3] Douglass referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

New Orleans, Louisiana, this _____27th_____ day of February, 2019.


_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE